UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NATE'S FINE FOODS, | Case No. 25-mc-80350-LB |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER** |
| v. | Re: ECF Nos. 1, 10 |
| JOHN SHEAHAN, | |
| Defendant. | |

## INTRODUCTION

The underlying dispute for this motion stems from ongoing insolvency proceedings against the Binetter family in Australia and the Bankruptcy Court for the Southern District of New York (S.D.N.Y.). John Sheahan (the Foreign Representative in the underlying proceedings) served Nate's Fine Foods with a subpoena generally seeking all of its financial records and all communications with the Binetter parties and the foreign debtors.[1]

Nate's moved to quash the third-party subpoena on grounds of overbreadth, burden, privilege, and ongoing litigation regarding a release of the underlying claims. Sheahan moved to transfer the

---

[1] Subpoena, Ex. A to Appleton Decl. – ECF No. 1-1 at 18. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 25-mc-80350-LB

motion to the S.D.N.Y. because it has already ruled on issues related to the subpoena and Nate's would experience little to no additional burden by litigating in that forum.

The court grants the motion to transfer Nate's motion to quash the subpoena to the Bankruptcy Court for the S.D.N.Y. The burden to Nate's is limited, and the interests of the issuing court in managing this case outweigh Nate's interests in obtaining local resolution of the motion and constitute exceptional circumstances.

**STATEMENT**

In the 1950s, members of the Binetter family migrated from Europe to Australia, where they founded several successful businesses. In 2014, the Australian Tax Office (ATO) concluded a longstanding audit against four of the Binetters' companies (the Prior Foreign Debtors) and issued tax assessments of more than AU $100 million, finding that they had engaged in a tax evasion scheme for over twenty-five years. A liquidator then obtained judgments of more than $100 million against Binetter family members and companies they controlled.[2] Following the ATO's tax assessments, Michael and Andrew Binetter moved to the United States.[3]

In May 2017, Sheahan (who was appointed Foreign Representative to the Prior Foreign Debtors) filed petitions under Chapter 15 in the U.S. Bankruptcy Court for the S.D.N.Y., seeking the court's recognition of the Prior Foreign Debtors' Australian liquidation proceedings as "foreign main proceedings," which the S.D.N.Y. granted.[4] Sheahan issued subpoenas on Andrew Binetter, Samantha Kelliher (Andrew's spouse), and Michael Binetter (the Binetter parties), they objected, and the court ordered compliance.[5] In 2018, Sheahan withdrew the subpoenas because the parties had settled.[6] The settlement agreement included a deed of release with releases and

---

[2] Order, No. 17-11266-pb (Bankr. S.D.N.Y.) – ECF No. 168 at 3–4.

[3] *Id.* at 4.

[4] Form 401, No. 17-11266-pb – ECF No. 1 at 1; Order, No. 17-11266-pb – ECF No. 43.

[5] Subpoenas & Objs., No. 17-11266-pb – ECF No. 59-1–8; Stipulation, No. 17-11266-pb – ECF No. 61 at 2.

[6] Notice, No. 17-11266-pb – ECF No. 63.

ORDER – No. 25-mc-80350-LB                     2

covenants not to sue the Binetter parties and certain affiliated companies given by Sheahan on behalf of the Prior Foreign Debtors.[7]

Following the October 2018 settlement, Sheahan was appointed as liquidator of several other Binetter companies, including the New Foreign Debtors, which were placed into liquidation in Australia.[8] In June 2020, the New Foreign Debtors were assessed by the Australian Commissioner of Taxation for tax liabilities, penalties, and interest of about AU $50 million as a consequence of their involvement in the Binetters' tax evasion scheme.[9] The New Foreign Debtors instituted proceedings against Israel Discount Bank (IDB) — one of the banks implicated in the tax evasion scheme — which resulted in settlement and the production of documents with new information about asset transfers between the Binetter parties and the New Foreign Debtors.[10]

In September 2021, Sheahan moved to reopen the Chapter 15 proceeding in the Bankruptcy Court, citing the documents produced by IDB and his appointment as liquidator of the New Foreign Debtors, and the S.D.N.Y. reopened the case.[11] Sheahan then sought recognition of the New Foreign Debtors' Australian insolvency proceedings as foreign main proceedings, which the court also granted.[12]

In May 2022, the S.D.N.Y. granted Sheahan's motion for an order authorizing examinations and service of subpoenas pursuant to Bankruptcy Code sections 105(a) and 1521(a) and Bankruptcy Rule 2004, authorizing Sheahan (as the Foreign Representative) to "issue Bankruptcy Rule 2004 subpoenas for documents, information and/or testimony without further order of this Court" and to "seek to enforce the terms of any Rule 2004 Subpoena, including, but not limited to, by moving to compel compliance therewith, in any court of competent jurisdiction without further

---

[7] Order, No. 17-11266-pb – ECF No. 168 at 4.
[8] Mot., No. 17-11266-pb – ECF No. 90 at 7 (¶ 16).
[9] Sheahan Decl., No. 17-11266-pb – ECF No. 72 at 11 (¶ 31).
[10] Mot., No. 17-11266-pb – ECF No. 90 at 7–8 (¶¶ 16–17, 20–21).
[11] Mot., No. 17-11266-pb – ECF No. 71; Order, No. 17-11266-pb – ECF No. 82.
[12] Order, No. 17-11266-pb – ECF No. 89.

order of this Court."[13] Sheahan issued and served subpoenas on each of the Binetter parties in late 2023 and early 2024, requesting the production of documents concerning financial transactions with Nate's and others.[14] The Binetter parties objected to the subpoenas and refused to produce any documents, raising grounds including Fifth Amendment privilege and that the deed of release from the 2018 settlement between the Prior Foreign Debtors and the Binetter parties barred all of the claims of the New Foreign Debtors against them.[15]

    In March 2025, the S.D.N.Y. granted the motion to enforce the Rule 2004 Order and compel production of responsive documents.[16] The Binetter parties filed a motion for reconsideration, which was denied.[17] Michael Binetter then produced documents and sat for a deposition, none of which concerned Nate's.[18] Mr. Binetter refused to produce his unredacted banking records, invoking the Fifth Amendment act of production privilege.[19] When asked at his deposition about his connection to Nate's, Michael Binetter testified that he worked as the general counsel at the company (with a salary of about $80,000) following his arrival from Australia in 2014, but he did not recall for how long he worked there.[20] He invoked his Fifth Amendment right against self-incrimination over 250 times during the deposition.[21] The parties have engaged in motion practice regarding Mr. Binetter's invocation of the testimonial and documentary privileges under the Fifth Amendment.[22]

---

[13] Order, No. 17-11266-pb – ECF No. 95.
[14] Subpoenas, Exs. A–C to Kopp Decl., No. 17-11266-pb – ECF No. 127-1–3.
[15] Objs., Exs. D–G to Kopp Decl., No. 17-11266-pb – ECF No. 127-4–7.
[16] Order, No. 17-11266-pb – ECF No. 168.
[17] Mot. & Order, No. 17-11266-pb – ECF Nos. 172, 191.
[18] Kopp Decl. – ECF No. 10-1 at 2 (¶ 4).
[19] *Id.*
[20] *Id.* (¶ 5).
[21] *Id.*
[22] *Id.* (¶¶ 4–5).

As early as 2018, Sheahan identified Nate's as potentially having relevant ties to the Binetters' tax scheme.[23] Through the IDB documents, Sheahan identified hundreds of thousands of dollars of transfers from one of the New Foreign Debtors and a recently recognized Australian debtor entity, Shield Holdings, that were made to JAAB Pasta USA LLC.[24] JAAB Pasta was the majority owner of Nate's, and public records searches indicated that Andrew Binetter was a founder of JAAB Pasta and a board member of Nate's.[25]

Sheahan served a subpoena for documents directly on Nate's in September 2025, calling for the production of eleven categories of documents seeking information about the relationship between Nate's, the Binetter parties, and the New Foreign Debtors, including documents and communications regarding financial transactions among the parties that could help the Foreign Representative identify funds improperly transferred by the Binetter parties from the New Foreign Debtors and potential causes of action.[26]

The parties consented to magistrate-judge jurisdiction.[27] 28 U.S.C. § 636(c). The court held a hearing on January 8, 2026.

**ANALYSIS**

The motion turns on Nate's burdens in litigating the motion in another forum and whether Nate's interests in local resolution outweigh the S.D.N.Y.'s interests in managing the underlying case.

Nate's contends that Sheahan has not met his burden to show exceptional circumstances warranting transfer because (1) litigating in another jurisdiction is burdensome, (2) the issuing court is not in a superior position to rule on the motion to quash because the issues are simple (burden, breadth, and privilege), (3) and deciding the motion to quash does not require revisiting issues already addressed in New York because Nate's is distinct from the Binetter parties and not subject

---

[23] *Id.* at 3 (¶ 6).
[24] *Id.* (¶ 7).
[25] *Id.* (¶ 8).
[26] *Id.* (¶¶ 9–10).
[27] Consents – ECF No. 13, 20.

to same level of discovery.[28] Sheahan asserts that transfer is appropriate because (1) any burden on Nate's would be mitigated by the ability to appear remotely and Nate's sharing of counsel with the Binetter parties, (2) the issuing court has already addressed core issues implicated by the motion to quash (including a motion to compel addressing the applicability of the deed of release to the New Foreign Debtor's claims), (3) transferring would promote judicial economy because the case is legally and factually complex (involving cross-border insolvency issues over eight years), and (4) it is the Binetter parties (not Nate's) who are truly objecting to the discovery.[29]

Transfer is appropriate.

"When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The foreign representative has the burden of showing exceptional circumstances. *Id.* advisory committee's note to 2013 amendment. "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena related motions." *Id.* Still, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Factors relevant to the transfer decision include "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Bright House Networks, LLC v. MarkMonitor, Inc.*, No. 20-MC-80083-TSH, 2020 WL 4464882, at *2 (N.D. Cal. Aug. 3, 2020) (cleaned up). Courts find that transfer is appropriate when the issuing court has already considered the issues implicated by the subpoena motions. *Id.*

---

[28] Opp'n – ECF No. 24 at 4–13.

[29] Reply – ECF No. 27 at 5–9.

Exceptional circumstances warrant transfer. The burden of litigating in the Bankruptcy Court for the S.D.N.Y. is limited by the ability of Nate's to appear remotely (Sheahan represented that all appearances since 2022 have been virtual) and Nate's sharing of counsel with the Binetter parties.[30] Other than the fact that Nate's CEO would be solely responsible for compliance efforts, Nate's points to no other specific burden.[31] The S.D.N.Y. also has considered issues that overlap with the motion to quash, including Fifth Amendment privilege and the effect of the 2018 settlement and release on the subpoena, which Nate's references in its motion to quash.[32] Sheahan represents that he expects to serve subpoenas in other districts too.[33] Because of Nate's limited burden and the implication of issues that the issuing court has already addressed, the interests of the Bankruptcy Court for the S.D.N.Y. in deciding the motion in the Rule 2004 framework outweigh Nate's interests in local resolution and constitute exceptional circumstances.

Nate's cites *Music Group Macao Commercial Offshore Ltd. v. Does* as a similar case that requires denying the motion to transfer here, but it is distinguishable. 82 F. Supp. 3d 979 (N.D. Cal. 2015). The proceedings in *Music Group* had been going for about seven months when the motion to transfer was filed, and the issuing court had decided one unopposed motion for expedited discovery.[34] *Id.* at 982–84. Here, the underlying proceedings have been ongoing in two venues for over eight years, and multiple substantive issues that have arisen in the bankruptcy case are implicated in the motion to quash.[35]

Generally, Nate's other cited cases also do not involve issues arising in a motion to quash that were previously addressed by the issuing court. *Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 19-mc-80089-SK, 2019 WL 13401929, at *2 (N.D. Cal. May 22, 2019) ("[N]one of the discovery requests addressed by the presiding judge concerned the same materials Arby's is requesting through the

---

[30] *Id.* at 7 n.1.

[31] Barker Decl. – ECF No. 24 at 18.

[32] Mot. – ECF No. 1 at 13, 20; Reply – ECF No. 27 at 8 (making this point).

[33] Reply – ECF No. 27 at 9.

[34] *See generally* Dkt., No. 2:14-cv-00621-RSM.

[35] Reply – ECF No. 27 at 9.

subpoena."); *Personalized Media Commc'ns, LLC v. Top Victory Elecs. Co.*, 16-mc-80122-SK, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 1, 2016) ("PMC has not cited to any previously court-determined discovery decision or issue with which this Court is at risk of conflicting."); *Natera, Inc. v. CareDx, Inc.*, No. 23-mc-80117-LJC, 2023 WL 3763808, at *3 (N.D. Cal. May 21, 2023) (no discussion of a risk of inconsistent rulings). While the court in *In re Verifone, Inc.* denied a motion to transfer and stayed compliance with the subpoena pending the issuing court's deciding an issue of Article III standing that arose in both proceedings, no similar question is present here. No. 18-mc-80087-VKD, 2018 WL 3532761, at *5–6 (N.D. Cal. July 23, 2018).

Nate's also cites cases where courts denied subpoenas as overbroad, contending that Sheahan's subpoena should be denied as being at least equally overbroad.[36] *United States v. McKesson Corp.*, No. 21-mc-80065, 2021 WL 2037965 (N.D. Cal. May 21, 2021); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005). But neither case involved discovery governed by Bankruptcy Rule 2004.[37] In any event, it does not change that issues addressed in the bankruptcy proceedings are implicated by the motion to quash.

With minimal burden at play, the interests of the issuing court in managing this case outweigh Nate's interests in obtaining local resolution of the motion and constitutes exceptional circumstances.

## CONCLUSION

The court transfers the motion to quash to the Bankruptcy Court for the S.D.N.Y. This resolves ECF No. 10.

**IT IS SO ORDERED.**

Dated: January 8, 2025

_____
LAUREL BEELER
United States Magistrate Judge

---

[36] Opp'n – ECF No. 24 at 7–8.

[37] Reply – ECF No. 27 at 9–11.